UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHEILA GREENSTEIN,<br><br>                Plaintiff,<br>    v.<br><br>NATIONWIDE LIFE INSURANCE COMPANY,<br><br>                Defendant. | Civil Action No.: |

# COMPLAINT

The Plaintiff, SHEILA GREENSTEIN, by and through her attorneys, Saxe Doernberger & Vita, P.C., alleges upon information and belief as follows:

## PARTIES

1. Plaintiff, SHEILA GREENSTEIN ("Ms. Greenstein"), is a resident of the state of Texas and for jurisdictional purposes a citizen of the state of Texas.

2. Upon information and belief, Defendant, NATIONWIDE LIFE INSURANCE COMPANY ("Nationwide Life" or "Defendant"), is a corporation organized and existing under the laws of the state of Ohio with its principal place of business in Columbus, Ohio.

3. Plaintiff's deceased spouse, Edward T. Biondi ("Mr. Biondi"), was an insured and participant under a Group Voluntary Accidental Death and Dismemberment policy issued on January 1, 2021 to his employer, Nationwide Mutual Insurance Company ("Nationwide Mutual"), by Defendant bearing group policy number NE00007 (the "Group Policy").

4. Plaintiff is the sole and primary beneficiary under the Group Policy.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the Plaintiff and Defendant are citizens of different states, the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and the matter presents a case of actual controversy between the parties.

6. Mr. Biondi was employed by Nationwide Mutual in Connecticut for more than thirty years.

7. While employed by Nationwide Mutual, Mr. Biondi was insured under the Group Policy.

8. While employed by Nationwide Mutual, Mr. Biondi resided with Plaintiff in their home in North Haven, Connecticut.

9. The Court has personal jurisdiction over the Defendant because, within the relevant time period, Defendant has either been licensed to do business in Connecticut; transacted substantial business in Connecticut; insured assets, liabilities and risks located in Connecticut; sold insurance policies in Connecticut and/or otherwise has sufficient contacts with the state of Connecticut.

10. Venue in this judicial district is appropriate pursuant to 28. U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the subject matter of this action occurred and/or a substantial part of property that is the subject of the action is or was situated.

## FACTUAL ALLEGATIONS

**The Group Policy**

11. The eligible insured group under the Group Policy includes active employees of Nationwide Mutual.

12. At all times relevant hereto, Mr. Biondi was an active employee of Nationwide Mutual.

13. The Group Policy provides benefits under a Plan called the Nationwide Mutual Insurance Company Plan (the "Plan").

14. Upon information and belief, the Plan Administrator of the Plan is Nationwide Mutual.

15. The Plan is an employee benefit welfare plan as that term is defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002(3).

16. Nationwide Mutual is a fiduciary as that term is defined under ERISA, 29 U.S.C. §1002(21)(A).

17. Benefits claims under the Group Policy are administered by Defendant and benefits provided in accordance with the terms of the Group Policy.

18. Defendant is a fiduciary as that term is defined under ERISA, 29 U.S.C. §1002(21)(A).

19. Upon information and belief, Mr. Biondi paid premiums for the Group Policy.

20. Upon information and belief, Nationwide Mutual paid premiums on behalf of Mr. Biondi for the Group Policy.

21. Upon information and belief, Nationwide Mutual deducted premiums from Mr. Biondi's wages on a bi-weekly basis for premiums of the Group Policy.

22. The Group Policy provides that Defendant has discretionary authority to determine benefits eligibility and to interpret the provisions of the Group Policy.

23. Specifically, the Group Policy provides:

Do We have discretionary authority for Benefit determination?

> Yes. We will make the final decision on Claims for Benefits under the Policy. When making a Benefit determination, we will have discretionary authority to interpret the terms and provisions of the Policy. This discretionary authority should not be construed to limit the legal action that may be taken by a Covered Person or Beneficiary in accordance with the Legal Actions provision of the Policy, and any applicable state or federal law.

24. The Connecticut Insurance Department issued Bulletin HC-67 on March 19, 2008 applicable to discretionary clauses in Group Policies and is applicable to the Group Policy under which Mr. Biondi was insured.

25. The Bulletin states in pertinent part:

> The Department wants to remind health insurers and health care centers writing individual and group health insurance coverage in Connecticut that such clauses cannot be used to improperly deny claims or to restrict any rights an insured has under the policy[.]…
>
> Discretionary clauses cannot in any way override policy definitions and policy terms, but rather may only be used as reasonable and appropriate in unusual situations where there is no specific language in the policy. Such clauses cannot be used to deny a claim which is otherwise properly payable under policy terms.

26. Defendant administered Plaintiff's claim for Accidental Death and Dismemberment benefits under the Group Policy.

27. Defendant is a fiduciary as that term is defined under ERISA, 29 U.S.C. §1002(21)(A).

28. The Group Policy provides that Defendant agrees to pay benefits of the Policy to the Beneficiary of a Covered Person.

4

29. The Group Policy defines proof as "[e]vidence satisfactory to Us that the terms and provisions of the Policy have been met" and provides that proof of claim must establish:

    a. The nature and extent of the loss or condition;

    b. Our obligation to pay the claim under the Policy; and

    c. The Claimant's right to receive payment.

30. Under the Group Policy, Accidental Death and Dismemberment Benefits are payable subject to the following conditions:

    a. The Loss is caused solely by an Accident;

    b. The Loss is not excluded by the terms of the Exclusions section of such benefits;

    c. The Accident occurs while Mr. Biondi is insured under this provision;

    d. The Loss occurs within 365 days after the date on which the Accident occurred unless otherwise specified;

    e. The maximum amount payable will be subject to the terms of the Limitations section of this provision.

31. The Group Policy defines Accident as "[a] specific unforeseen event, that is sudden, unexpected, and unintended, over which a Covered Person has no control and which happens while the Covered Person is covered under this Policy and which directly, and from no other cause, results in an Injury."

32. The Group Policy also provides that when due Proof of Loss is received, a beneficiary is entitled to the Principal Sum for Accidental Death and Dismemberment Benefits when Loss of life occurs.

33. The Group Policy defines Proof of Loss as "Evidence satisfactory to Us that a person has satisfied the conditions and requirements for a benefit. Proof of Claim must establish:

    (1) the nature and extent of the loss or condition;

(2) Defendant's obligation to pay the claim under the Policy; and

(3) the Claimant's right to receive payment."

**THE ACCIDENTAL DEATH CLAIM**

**Mr. Biondi's Medical History**

34. Mr. Biondi began employment with Nationwide Mutual on or about January 22, 1990 while a domiciliary of Connecticut.

35. Mr. Biondi was a licensed attorney and employed by Nationwide Mutual as a Specialist III, Claims Quality Assurance, in his employer's Commercial Lines Department from January 22, 1990 until August 19, 2021 when he passed away.

36. During the course of his tenure with Nationwide Mutual, Mr. Biondi worked from various locations in Connecticut including Branford, Wallingford, Shelton and North Haven, Connecticut.

37. Mr. Biondi had a known history of Orthostatic Hypotension and was diagnosed with this condition in 2018.

38. Mr. Biondi suffered from two Orthostatic Syncope episodes in the past which caused lightheadedness and led to Mr. Biondi losing consciousness, falling and injuring himself.

39. Dr. Collin Watson, Mr. Biondi's doctor, documented one episode of Mr. Biondi's Orthostatic Syncope episode in December of 2018 which resulted in a nasal fracture.

40. During this episode Mr. Biondi woke up in the middle of the night, got up to use the bathroom, and had a syncopal episode which caused him to lose consciousness, fall and fracture his nose.

**Mr. Biondi's Accidental Death**

41. On August 8, 2021, Mr. Biondi had a vacation home in Massachusetts.

42. On August 8, 2021, Mr. Biondi was asleep on the first floor near the stairway of his vacation home.

43. On August 8, 2021, at approximately 5:00 a.m., the Plaintiff awoke from her sleep after hearing a loud noise.

44. Plaintiff left her bedroom and went to the stairs of her home and found Mr. Biondi flat on his back at the bottom of the stairs with his feet on the steps indicating he had fallen backwards.

45. When the Plaintiff found Mr. Biondi at the bottom of the stairway, he was unconscious and struggling to breathe.

46. Mr. Biondi was ultimately transported by helicopter by first responders to Providence Hospital where it was determined that he suffered blunt trauma to the back of his head and a traumatic brain injury.

47. Mr. Biondi never regained consciousness following his fall and passed away ten days later on August 19, 2021.

48. Mr. Biondi's physician, Dr. Collin Watson, concluded that it is possible another syncope episode occurred on August 8, 2021 resulting in Mr. Biondi's fall backwards down the stairs.

49. Mr. Biondi's Certificate of Death issued by the Rhode Island Department of Health Medical Examiner declared Mr. Biondi's cause of death an accident.

50. The Certificate of Death further identified the sole cause of Mr. Biondi's death as a subdural hematoma caused by blunt force impact.

**Plaintiff's Claim for Accidental Death and Dismemberment Benefits**

51. On August 19, 2021, Mr. Biondi was insured under the Group Policy, and Plaintiff was a beneficiary of said Group Policy.

52. Plaintiff reported Mr. Biondi's death as well as the Claim for Accidental Death and Dismemberment Benefits to the Defendant on or about October 5, 2021 (the "Claim").

53. Plaintiff supplied Defendant with all requested information including an executed Authorization for Defendant to obtain Mr. Biondi's medical records.

54. Defendant obtained medical records associated with Mr. Biondi's accident and intentionally did not obtain any additional records of his medical history, including records of his history of Orthostatic Syncope and falls from such condition.

**Defendant's Denial of Plaintiff's Claim**

55. More than 150 days after Plaintiff filed her claim, Defendant issued a letter to Plaintiff on approximately March 17, 2022 (which was misdated March 17, 2021) denying Plaintiff's claim (the "Coverage Denial").

56. Defendant denied Plaintiff's claim and alleged that the Loss was not eligible for Death and Dismemberment benefits based on an exclusion in the Group Policy.

57. The cited exclusion in the Group Policy provides in pertinent part:

No benefit will be paid for any Accidental Death and Dismemberment Benefit or under any Additional Benefit for any death or Loss resulting in whole or in part from, or contributed to by, or as a natural or probable consequence of any of the following even if the immediate cause of the loss is an Accidental bodily Injury:

\*\*

10. Being under the influence of any drug, narcotic, intoxicant or chemical, unless administered by or taken according to the advice of a Provider.

58. Defendant alleged Plaintiff's claim was not eligible for benefits under the Group Policy claiming that Mr. Biondi had a purported elevated blood alcohol level at the time of his accident.

59. Defendant alleged that Mr. Biondi's purported elevated blood alcohol level was higher than the legal intoxication level for driving in the state of Massachusetts.

60. It is undisputed that Mr. Biondi was not driving when he suffered his accident.

61. In referring to the exclusion set forth above, Defendant's denial letter provided: "[b]ased on the above provision, the loss is not eligible and is excluded by the terms of the policy."

62. Defendant provided no further explanation in its benefits determination letter to Plaintiff.

63. Defendant expressly did not inform Plaintiff of any additional material or information necessary for Plaintiff to perfect her claim and an explanation of why such material or information is necessary.

64. Defendant advised Plaintiff in its letter that if the claim was filed under a policy subject to ERISA, she has the right to appeal the decision.

65. Plaintiff requested from Defendant a copy of the claim file associated with her claim under the Group Policy.

66. Noticeably absent from the documentation received from Defendant was any medical evaluation or document review performed by Defendant.

67. Noticeably absent from the documentation received from Defendant was any chronology of the claim review including the identity of personnel employed by Defendant or third-parties who participated in any manner in the review of the claim.

**Plaintiff's Appeal of the Adverse Benefit Determination**

68. Defendant's denial letter also provided that if Plaintiff sought to appeal the decision, she must write a letter to the Defendant within sixty days outlining her position and any issues or comments she has in connection with its decision.

69. On or about May 13, 2022, Plaintiff sought and received from Defendant an additional sixty day extension of time to appeal the adverse benefit determination through July 16, 2022.

70. On or about July 15, 2022, Plaintiff sent a letter to Defendant appealing the adverse benefit determination which included the following documents and information:

   a. Collin C. Watson, MD report dated May 13, 2022;

   b. Yale New Haven Hospital records of Mr. Biondi for time frame March 2017 through May 2021;

   c. Donald Rocklin, MD cardiology medical records for time frame May 2017 through December 2020;

   d. Personal Statement of Plaintiff Sheila Greenstein.

   e. All documents forwarded to Ms. Greenstein by Nationwide which represented the Administrative Record prior to the appeal;

   f. Rhode Island Hospital medical records associated with Mr. Biondi's admission after the accident and until he passed away for time frame August 8, 2021 through August 17, 2021;

   g. Accidental Death and Dismemberment insurance policy issued by Nationwide;

      h.    Nationwide's claim file, including a beneficiary statement from Shelia Greenstein, an employer statement from Mike Yoho of Nationwide Mutual, Edward Biondi's death certificate, and Wareham Police Department report for August 8, 2021;

      i.    Boston MedFlight records for August 8, 2021; and

      j.    Nationwide's denial letter of March 17, 2022.

71. As part of her administrative appeal, Plaintiff's letter to Defendant outlined the facts surrounding Mr. Biondi's fall, his past medical history of syncopal episodes with history of losing consciousness, falling and becoming injured, Mr. Biondi's loyalty to Nationwide as an employee of over thirty years, and a request that Defendant reverse its adverse benefit determination.

72. On or about July 20, 2022, Defendant acknowledged receipt of Plaintiff's appeal letter and supporting documents by way of letter and advised it was in the process of reviewing same.

73. On August 2, 2022, less than two weeks after Defendant acknowledged receipt of the appeal of the adverse benefit determination, Defendant sent a final appeal determination letter to Plaintiff upholding its initial adverse benefit determination.

74. Defendant's August 2, 2022 letter is nearly identical to the initial adverse benefit determination.

75. Defendant's August 2, 2022 letter failed to explain why the adverse benefit determination was upheld in light of the additional information submitted by Plaintiff on appeal.

76. Defendant's August 2, 2022 letter failed to address Plaintiff's position, comments, or additional documentation submitted.

77. Subsequent to receipt of Defendant's letter, on August 15, 2022, Plaintiff asked Defendant for a copy of the appeal claim file.

78. On August 24, 2022, Plaintiff followed up with Defendant to obtain the appeal claim file.

79. On August 24, 2022, Defendant acknowledged receipt of Plaintiff's request and indicated that it would be in contact soon.

80. On August 30, 2022, 15 days after Plaintiff's first request for a copy of the appeal file, Defendant stated:

> In reviewing our file, it was discovered that a copy of the file was previously provided to you on March 28, 2022 in its entirety. No additional information is available.

81. Plaintiff responded to Defendant as follows:

> Ms. Chreene: I want to make sure that I understand your email sent yesterday, to confirm that Nationwide considered my appeal but does not have any documents related to its consideration of my appeal and/or the decision to uphold the claims decision. If this is incorrect, please let me know.

82. On September 1, 2022, Defendant responded as follows:

> The claim file in its entirety, along with your letter of appeal and supplementary medical records submitted July 15, 2022 were reviewed for reconsideration. Your submitted letter of appeal and supplementary medical records were the only addition to the file. Based on the policy language as outlined on page 18 of the Certificate of Coverage and quoted in our appeal determination letter of August 2, 2022, the loss is not eligible and excluded by the terms as explained in the "Exclusion" section. The supplemental documentation submitted presented no additional information regarding Mr. Biondi's blood ethanol level at the time of his accident. Therefore, the exclusion still applies and the denial upheld.

83. Defendant's response of September 1, 2022 clearly failed to acknowledge Plaintiff's submission of her personal statement and failed to identify which medical records had been reviewed and the outcome of such review.

**Defendant's Unreasonable Claims Conduct**

84. Throughout the Plaintiff's claim and appeal under the Group Policy, Defendant acted unreasonably in the following ways:

    a. It failed to conduct an adequate investigation of the Plaintiff's claim and/or appeal by failing to thoroughly and adequately obtain and review Mr. Biondi's medical records;

    b. It failed to conduct an adequate or any investigation of the Plaintiff's claim and/or appeal by failing to thoroughly and adequately review the Plaintiff's personal statement, appeal letter, and medical records submitted by Plaintiff;

    c. It failed to conduct an adequate investigation of the Plaintiff's claim and/or appeal by failing to retain and/or hire a physician or other medical or other expert to review Mr. Biondi's medical records;

    d. It failed to conduct an adequate investigation of the Plaintiff's claim and/or appeal by failing to retain an independent medical expert opinion to support its grounds for denial when performing its investigation;

    e. It improperly deferred to its initial adverse claim determination when issuing a decision on Plaintiff's appeal despite the additional documentation and information provided by Plaintiff that supported payment of the death benefit;

    f. It failed to demonstrate how, if at all, the cited exclusion applied to the circumstances of Mr. Biondi's accident.

    g. It failed to demonstrate that its allegation that Mr. Biondi was under the influence of alcohol caused his death.

  h. It failed to consider or take into account all comments, documents, records, and other information submitted by the Plaintiff prior to issuing its August 22, 2022 appeal decision letter;

  i. It failed to provide any explanation whatsoever concerning its claimed review of the records and documentation submitted by Plaintiff.

  j. It failed to pay the claim proceeds that Plaintiff is properly owed and entitled to under the Group Policy.

  85. Defendant committed the following violations of federal regulations in connection with its decision on Plaintiff's claim and/or the appeal under the Group Policy:

    a. In violation of §2560.503-1(b), Defendant failed to establish and maintain reasonable claims procedures in the administration of Plaintiff's claim.

    b. In violation of §2560.503-1(b)(5), Defendant failed to ensure that claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that the plan provisions have been applied consistently with respect to similarly situated claimants.

    c. In violation of §2560.503-1(f), Defendant failed to notify Plaintiff of its initial adverse benefit determination within ninety days or secure an extension of time in keeping with the procedural requirements of this section.

    d. In violation of §2560.503-1(g)(1)(iii), Defendant failed to ensure that the notification of the adverse benefit determination contained a description of any additional material or information necessary for Plaintiff to perfect the

       claim and an explanation of why such material or information is necessary, in a manner calculated to be understood by Plaintiff.

e.     In violation of §2560.503-1(h)(2)(iv), Defendant failed to provide Plaintiff with a full and fair review of her claim and adverse benefit determination because it did not provide for a review that took into account all comments, documents, records, and other information submitted by the Plaintiff without regard to whether such information was submitted or considered in the initial benefit determination.

f.     In violation of 29 U.S.C. § 1133(2), Defendant failed to provide Plaintiff with a full and fair review of her claim and adverse benefit determination because it failed to provide for a review that did not show deference to its initial adverse benefit determination.

g.     In violation of §2560.503-1(h)(3)(iv), Defendant failed to provide for the identification of medical experts whose advice was obtained on behalf of the plan in connection with Plaintiff's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

h.     In violation of §2560.503-1(j)(3), in their benefit determination on review, Defendant failed to provide a statement that the Plaintiff is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant her claim to benefits on review.

### De Novo Review Applies to Plaintiff's Claim

86. As a result of Defendant's violations of 29 C.F.R. §2560.503-1, et seq. and the failures of Defendant to establish or follow the regulation's minimum requirements in connection with the claim and appeal decisions, the decision to deny Plaintiff benefits and the decision to uphold the decision on appeal are not entitled to judicial deference, and the Court must review Plaintiff's claim *de novo*.

87. Violations committed by Defendant were not both inadvertent and harmless.

88. At all relevant times, Defendant has been operating under an inherent structural conflict of interest inasmuch as Defendant is both liable for benefit payments due Plaintiff and is the claims fiduciary determining eligibility for claims.

89. Defendant's determinations were influenced by this conflict of interest.

90. Defendant's perpetual goal of profitmaking conflicts with its obligation as an ERISA fiduciary to decide claims, such as Plaintiff's claim.

91. Defendant has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

### COUNT ONE
### FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. 1132(a)(1)(B)

92. Plaintiff repeats and reiterates the allegations contained in Paragraphs 1 through and including 91 as if more fully set forth herein.

93. Defendant has no legal basis for denying payment of Plaintiff's benefits claim under the Group Policy as aforementioned.

94. Under the Group Policy, Defendant agreed to provide Mr. Biondi, and Plaintiff as his beneficiary, with certain Accidental Death and Dismemberment insurance benefits in connection with the terms and conditions therein.

95. For all relevant periods, Defendant failed and refused to pay Plaintiff all proceeds under the Group Policy to which she is rightfully entitled.

96. Plaintiff has satisfied all conditions precedent under the Group Policy and is eligible to receive all proceeds under the Group Policy.

97. Plaintiff was not required to exhaust her administrative remedies because Defendant failed to render a claim determination in keeping with governing Department of Labor regulations.

98. Plaintiff has exhausted all administrative remedies.

99. Defendant's decision to deny Plaintiff the proceeds under the Group Policy is unreasonable.

100. Defendant's decision to deny Plaintiff's the proceeds under the Group Policy was not based on substantial evidence.

101. Defendant's decision to deny Plaintiff's benefits is an abuse of discretion.

102. Defendant has financial conflicts of interest concerning the handling, monitoring and denial of Plaintiff's claim to the proceeds under the Group Policy to which she is entitled.

103. Defendant was influenced by its financial conflicts of interest, as both the administrator of the Group Policy and the payor of benefits therein, when deciding to deny Plaintiff's claim for proceeds under the Group Policy.

104. The unlawful behavior of Defendant is evidenced by the following:

    a. Denying benefits when Plaintiff was in fact entitled to be paid said proceeds under the Group Policy.

    b. Intentionally misconstruing the terms of the Group Policy.

      c. Refusing to consider the evidence supplied by Plaintiff as part of her claim and appeal when it knew that Plaintiff was entitled to said proceeds under the terms of the Group Policy, in bad faith and contrary to the Group Policy.

      d. Unreasonably failing to pay the proceeds of the Group Policy to Plaintiff without having any evidence, substantial or otherwise, supporting its decision to deny benefits.

      e. Engaging in a pattern of procedural irregularities including violations of federal regulations as set forth *supra* in order to advance its own corporate interests in denying benefits, to the detriment of participants of the Plan.

      f. Consistently acting in its own corporate interests instead of those of the Plan and its participants.

105. Defendant breached its fiduciary duties by failing to fairly review and reasonably interpret the evidence submitted by Plaintiff in connection with her claim and appeal.

106. Defendant ignored (a) the evidence submitted by Plaintiff concerning the facts surrounding Mr. Biondi's fall and his medical history, and (b) Defendants' knowledge and notice concerning Mr. Biondi's medical history which caused same.

107. Defendant breached its fiduciary duties to Plaintiff by placing its financial interests in reducing its liabilities and increasing its profitability above Plaintiff's interests to receive policy proceeds under the Plan.

108. A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008)*, applies to evaluating the actions of Defendant in this case.

109. Defendant was required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

110. Defendant violated the higher-than-marketplace standards that ERISA imposes on insurers and fiduciaries.

111. Defendant failed to comply with 29 U.S.C. §1104(a)(1) by failing to discharge its duties solely in the interests of participants and beneficiaries of the Plan.

112. Plaintiff has been forced to bring this action as a direct result of Defendant's unlawful denial of benefits and violation of the Group Policy terms and ERISA.

113. Pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as beneficiary under the Group Policy, Plaintiff is entitled to recover Accidental Death and Dismemberment benefits in the Principal Sum of $750,000, plus interest from August 19, 2021.

## COUNT TWO
## FOR ATTORNEYS FEES AND
## COSTS PURSUANT TO 29 U.S.C. §1132(g)(1)

114. Plaintiff repeats and reiterates the allegations contained in Paragraphs 1 through and including 113 as if more fully set forth herein.

115. As a result of the failure by Defendant to pay Plaintiff all benefits due under the terms of the Plan, Plaintiff has been forced to employ attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and the costs of this action pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

**WHEREFORE**, Plaintiff demands judgment as follows:

a. The sum of $750,000 which represents the face value of the Group Policy, together with interest from August 19, 2021;

  b. For Plaintiff's attorneys' fees and the costs of this suit pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1); and

  c. For such other and further relief that this Court deems just and proper.

Dated: Trumbull, Connecticut
    February 14, 2022

                Saxe Doernberger & Vita, P.C.

          By: /s/Eve-Lynn Gisonni
             Eve-Lynn Gisonni, Esq. (ct31271)
             Cileena Y. Terra, Esq. (ct31192)
             EGisonni@sdvlaw.com
             CTerra@sdvlaw.com
             35 Nutmeg Drive, Suite 140
             Trumbull, Connecticut 06611
             Tel.: (203) 287-2100
             Fax: (203) 287-8847

             Attorneys for Plaintiff
             SHEILA GREENSTEIN